■ In the Matter of SHONNA K. HOYT, Respondent, v THOMAS W. HOYT, Appellant.—Yesawich, Jr., J. Appeal from an order of the Family Court of Madison County (Kepner, Jr., J.), entered September 11, 1989, which, inter alia, granted petitioner's application, in a proceeding pursuant to Family Court Act article 4, to direct respondent to pay the arrears for the support of his children.

Before divorcing, the parties conceived two children. Under the terms of the parties' separation agreement, which they later modified, also by agreement, and which underlies an order of Family Court dated October 7, 1987, respondent obligated himself to pay weekly child support in the amount of $50. Commencing March 1, 1986, the rate increased to $100 per week. Respondent has heretofore been found in willful violation of this order on two separate occasions; his third violation provides the basis for the instant appeal. As of March 1989, arrears in the amount of $3,040 were claimed to be due.

After a hearing, the Hearing Examiner found that respondent's noncompliance was willful and recommended incarceration. Family Court subsequently dismissed respondent's filed objections and sentenced him to 60 days in the Madison County Jail. We affirm.

Failure to pay court-ordered child support constitutes prima facie evidence of a willful violation (Family Ct Act § 454 [3] [a]). Respondent admits that he failed to pay, but contends that the violation was not willful because he was financially unable to do so (see, Family Ct Act § 455 [5]).

A horse trainer, respondent introduced his Federal income tax return at the hearing to justify his claim, confirmed by his accountant, that in 1988 he sustained a business loss of $3,437. Additionally, respondent testified that he owned no real property, had no savings and owed back rent. Cross-examination of respondent, however, elicited that he was not quite so destitute. He readily admitted that during 1988 he owned at least $1,000 worth of tack, and received *approximately* the following income: $1,100 per month for training horses; $370 per month for boarding horses other than those he trained; $200 per year for acting as a broker; a similar amount for transporting horses to shows; $40 per month for teaching riding; and $362 for the sale of a horse he owned in partnership. Moreover, he acknowledged that his current live-in girlfriend shared responsibility for paying much of the $1,515 monthly expenses he claimed on his financial disclosure affidavit.

Although respondent has at last relinquished his unrealistic pursuit of a horse-training career and obtained other employment, the fact remains that the record demonstrates a lengthy history of nonpayment. Indeed, there is no indication that respondent ever made any attempt, other than a single $100 payment, to comply with the order of child support or to have it modified so as to render it financially more palatable *(compare, Matter of Carella v Collins,* 144 AD2d 78, 83). Further, the transcript reveals that respondent's income during 1988 was more than necessary to meet his stated expenses, and to feed and clothe himself; yet, despite this, he failed to contribute to his children's support. These factors, combined with respondent's stubborn determination to succeed in an area which for him was economically unproductive for more than four years, fully warrant the Hearing Examiner's finding that his refusal to abide by the order was willful *(see, Matter of Pirie v Law,* 92 AD2d 701, 702; *Matter of Gell v Gell,* 75 AD2d 961; *see also, Matter of Sheridan v Sheridan,* 70 AD2d 698, *lv dismissed* 48 NY2d 655).

Order affirmed, without costs. Mahoney, P. J., Casey, Weiss, Yesawich, Jr., and Mercure, JJ., concur.