*771 OPINION OF THE COURT
Francesca E. Connolly, J.
Notice of Right to Seek Modification of Child Support Order
This decision contains a child support order. The parties are advised that pursuant to the Low Income Support Obligation and Performance Improvement Act (L 2010, ch 182), codified in Domestic Relations Law § 236 (B) (7) (d) and (9) (b) (2) and Family Court Act § 451, unless the parties have specifically opted out of subparagraph (2) or (3) below in a validly executed agreement or stipulation, either party has the right to seek a modification of this child support order upon a showing of:
1. a substantial change of circumstances; or
2. that three years have passed since the order was entered, last modified, or adjusted; or
3. there has been a change in either party’s gross income by 15% or more since the order was entered, last modified, or adjusted, provided that the reduction in income was involuntary and the party has made diligent attempts to secure employment commensurate with his or her education, ability, and experience.
The parties are further advised that, pursuant to Domestic Relations Law § 236 (B) (9) (b) (2), child support arrears that have accrued prior to the date of application to annul or modify any prior order or judgment as to child support may not be reduced or annulled.
The plaintiffs motion by order to show cause seeks an order of pendente lite relief, including an order of child support and maintenance; an order awarding the plaintiff temporary custody of the parties’ three children during the pendency of the action; an order directing the defendant to pay all expenses associated with the marital residence; an order directing the defendant to continue and maintain health insurance and to pay 100% of all unreimbursed medical, health, therapeutic, and dental expenses for the plaintiff and the three children; an order directing the defendant to pay the preschool tuition of the parties’ son; an order granting the plaintiff exclusive possession of the marital residence during the pendency of the action; an order directing the defendant to pay all expenses for a motor vehicle for the plaintiff during the. pendency of the action; and an order granting plaintiff interim counsel fees of $7,500. The defendant, who is currently unemployed, opposes the motion, but states that he *772 will agree to pay child support in the amount of 29% of his income up to $130,000 once he becomes employed. Neither party mentions the temporary maintenance guidelines, which became effective for all actions commenced as of October 12, 2010, in their motion papers.
Factual Background
The parties were married on June 2, 2007, and have three children of the marriage, one child age five and twins age three. This action for divorce was commenced on December 30, 2010. The plaintiff is 32 years of age and the defendant is 46 years of age. The plaintiff is a full-time mother and housewife. Before the marriage, the plaintiff worked as an esthetician. The defendant alleges that the plaintiff is on contract as a model for a modeling agency. Although the defendant believes that the plaintiff worked as an esthetician in 2009 and 2010, the plaintiff denies this. It does not appear that the plaintiff had any earnings during the marriage, despite the defendant’s claim that he implored her to seek work. She is listed as a homemaker on the parties’ joint tax returns.
The defendant received his BA from Tufts University in 1986 and his MBA from Harvard University in 1991. He has been unemployed since October of 2010 when he was terminated from his job as a vice-president at a corporation. He claims that he has been diligently looking for work since losing his job. He received a severance package of $115,000, which he claims has been used to support his family. The defendant earned $156,676 for about 42 weeks of work through October 22, 2010, in addition to his severance package. The income tax returns indicate that the defendant earned $300,000 in 2007, $172,024 in 2008, and $256,909 in 2009, which is the most recently filed income tax return.
The parties resided together with their three children in the marital residence, a rental home located in New Rochelle, New York, until December 15, 2010, when the Westchester County Family Court issued a modified temporary order of protection directing the defendant to stay away from the plaintiff and the children at the marital residence, except for purposes of pick up and drop off during periods of visitation, and to remove his personal belongings. The plaintiff remains in the marital residence with the three children, while the defendant resides with his parents.
The temporary order of protection expires on March 25, 2011. The family offense, custody, and support petitions pending in *773 Family Court were removed to this court and consolidated with this action by order dated January 31, 2011.
Discussion/Analysis
Pendente Lite Support
Temporary Maintenance
For all actions commenced on or after October 12, 2010, courts are required to apply a statutory mathematical formula in determining temporary maintenance awards. (Domestic Relations Law § 236 [B] [5-a] [c].) The standards previously used by the courts in determining pendente lite support — fashioning an award that serves as an accommodation between the reasonable needs of the moving spouse and the financial ability of the other spouse (Pezza v Pezza, 300 AD2d 555 [2d Dept 2002]; Ayoub v Ayoub, 63 AD3d 493, 498 [1st Dept 2009]), and to “tide over the more needy party, not to determine the correct ultimate distribution” (Valente v Valente, 269 AD2d 389, 390 [2d Dept 2000]; Yecies v Yecies, 108 AD2d 813, 814 [2d Dept 1985]) — no longer apply.
Pursuant to Domestic Relations Law § 236 (B) (5-a) (c), after the statutory formula is applied to the parties’ income, the calculated amount is considered the presumptive award of temporary maintenance, which shall be ordered, unless the court finds that the presumptive award would be unjust or inappropriate based upon the following 17 factors prescribed in Domestic Relations Law § 236 (B) (5-a) (e) (1):
“(a) the standard of living of the parties established during the marriage;
“(b) the age and health of the parties;
“(c) the earning capacity of the parties;
“(d) the need of one party to incur education or training expenses;
“(e) the wasteful dissipation of marital property;
“(f) the transfer or encumbrance made in contemplation of a matrimonial action without fair consideration;
“(g) the existence and duration of a pre-marital joint household or a pre-divorce separate household;
“(h) acts by one party against another that have inhibited or continue to inhibit a party’s earning capacity or ability to obtain meaningful employment
*774 “(i) the availability and cost of medical insurance for the parties;
“(j) the care of the children or stepchildren, disabled adult children or stepchildren, elderly parents or in-laws that has inhibited or continues to inhibit a party’s earning capacity or ability to obtain meaningful employment;
“(k) the inability of one party to obtain meaningful employment due to age or absence from the workforce;
“(1) the need to pay for exceptional additional expenses for the child or children, including, but not limited to, school, day care and medical treatment;
“(m) the tax consequences to each party;
“(n) marital property subject to distribution . . . ;
“(o) the reduced or lost earning capacity of the party seeking temporary maintenance as a result of having foregone or delayed education, training, employment or career opportunities during the marriage;
“(p) the contributions and services of the party seeking temporary maintenance as a spouse, parent, wage earner and homemaker and to the career or career potential of the other party; and
“(q) any other factor which the court shall expressly find to be just and proper.”
If the court determines that the presumptive temporary maintenance award is unjust or inappropriate, thereby warranting a deviation, the statute requires that the order adjusting the presumptive award be in writing and it must include the amount of the unadjusted presumptive award of temporary maintenance, the factors the court considered, and the reasons the court adjusted the presumptive award. (Domestic Relations Law § 236 [B] [5-a] [e] [2].)
In determining income for purposes of calculating temporary maintenance, the statute uses the same definition of income as set forth in the Child Support Standards Act, and also includes any income from income producing property to be distributed as part of equitable distribution. (Domestic Relations Law § 236 [B] [5-a] [b] [4].) The court is required to establish the parties’ support obligation “as a function of the income that is, or should have been, reflected on the party’s most recently filed income tax return.” (See Wallach v Wallach, 37 AD3d 707, 708 [2d Dept 2007]; Domestic Relations Law § 240 [1-b] [b] [5] [i].) *775 Where the record demonstrates that a party’s income tax return does not reflect the party’s actual income or demonstrated earning potential, the court may impute income to establish the party’s support obligation, (id.; see also Bittner v Bittner, 296 AD2d 516, 517 [2d Dept 2002].) “Moreover, the court is not required to find that a party has deliberately reduced his income to avoid his support obligations in order to impute income to that party.” (Id.)
Although the defendant claims in conclusory fashion that he has been looking for work, other than this self-serving statement, he fails to show specifically what efforts he has made to find employment. The defendant has the “burden of establishing that he had diligently sought to obtain new employment commensurate with his qualifications and experience” (Paul v Paul, 67 AD3d 757, 758 [2d Dept 2009]), a burden he has failed to meet in his motion papers. (See generally Matter of Nassau County Dept. of Social Servs. v Walker, 95 AD2d 855 [2d Dept 1983]; Matter of Pirie v Law, 92 AD2d 701 [3d Dept 1983].)
Under the circumstances presented here, the court will use the parties’ 2009 income tax return, which is the return most recently filed, to establish the support obligation. In 2009, the defendant earned $256,909. Considering the defendant’s past employment history and earning capacity, even though the defendant is currently unemployed, this is an appropriate amount of income to be imputed to him in determining his child support and temporary maintenance obligations.
In light of the plaintiff’s status as a full-time mother and housewife during the marriage, and considering the young ages of the three children, no income will be imputed to her in calculating the temporary maintenance award.
Statutory Calculations to Determine Guideline Amount of Temporary Maintenance
For purposes of calculating income under the temporary maintenance statute, annual income is defined as gross income, less FICA and New York City or Yonkers income taxes. Here, the defendant’s income is $248,698 ($256,909 less $8,211 for FICA).
The court is then required to make two calculations using the parties’ annual incomes, capping the payor’s income at $500,000 for both calculations, and then the two figures are compared. The presumptive award of temporary maintenance shall be the lower of these two figures, or $0 if the second calculated figure is less than or equal to $0.
*776 For the first calculation, the court is required to subtract 20% of the payee’s income from 30% of the payor’s income to arrive at the first figure for the comparison. Here, since the plaintiff has no income to subtract, and 30% of the defendant’s income is $74,609, this is the first calculated figure for the court to compare.
For the second calculation, the court is required to add together the payor’s income and the payee’s income, and multiply this sum by 40%. The payee’s income is then subtracted from this figure. Here, the parties’ incomes total $248,698. Multiplying this figure by 40%, the calculated figure is $99,479. Since the plaintiff has no income to subtract, $99,479 becomes the second calculated figure for the court to compare.
The guideline amount for temporary maintenance shall be the lower of these two calculated figures, or $74,609 per year ($6,217.42 per month), which is the presumptive award for temporary maintenance.
Since the payor’s income is below $500,000, the court need not consider the 19 factors prescribed in Domestic Relations Law § 236 (B) (5-a) (c) (2) (a) for any additional guideline amount of temporary maintenance.
Child Support
“Courts considering applications for pendente lite child support may, in their discretion, apply the CSSA standards and guidelines, but they are not required to do so.” (Rubin v Della Salla, 78 AD3d 504, 505 [1st Dept 2010]; George v George, 192 AD2d 693 [2d Dept 1993].) In accordance with the Child Support Standards Act (CSSA), the court has considered the calculations delineated in Domestic Relations Law § 240 (1-b) (c) as well as the factors set forth in Domestic Relations Law § 240 (1-b) (f), which permit a deviation from the calculations set forth in Domestic Relations Law § 240 (1-b) (c).
In order to calculate the child support obligation under the CSSA, the maintenance award, which is made concurrently with the child support award, is deductible to the payor spouse, but is not considered as income to the custodial parent. (See Wallach v Wallach, 37 AD3d at 709; Matter of Krukenkamp v Krukenkamp, 54 AD3d 345, 346 [2d Dept 2008].) Deducting the maintenance payments and FICA, the total net income amounts to $174,089. Applying the CSSA percentage of 29% for three children, the noncustodial parent’s pro rata share of the basic child support obligation is $37,700 per year for basic child sup *777 port up to an income of $130,000. For income above $130,000, the child support amount would be $12,786, for a total support payment of $50,486 per year.
Support Award
After considering the 17 statutory factors set forth in Domestic Relations Law § 236 (B) (5-a) (e) (1), the court finds that the presumptive amount of temporary maintenance is just and appropriate. Accordingly, the defendant shall pay the plaintiff $6,217.42 per month ($74,609 per year) as and for temporary maintenance, which shall be tax deductible to the defendant and taxable as income to the plaintiff. This award shall continue until further order of the court.
The court also finds that it is appropriate to calculate pendente lite child support in accordance with the Child Support Standards Act contained in Domestic Relations Law § 240 (1-b). Considering the standard of living enjoyed by the children during the marriage, the economic reality of raising a family in Westchester County, the educational background of the parties, and the disparity in the parents’ income, the court will apply the child support guidelines to the total amount of the parties’ combined incomes. Based upon the facts and circumstances of this particular case, this application would result in a just and appropriate award for child support. (Matter of Cassano v Cassano, 85 NY2d 649 [1995].) Accordingly, the defendant is directed to pay the plaintiff $4,207.17 per month ($50,486 per year) as and for child support. Considering the shift in financial resources to the plaintiff and the significance of the support award, the defendant shall be permitted to take the tax exemptions for the three children.
In addition, the defendant shall maintain in full force and effect the current medical and dental insurance coverage for the benefit of the plaintiff and the parties’ children. The parties and the children shall use in-network health care providers whenever possible. The defendant shall also pay 100% of the unreimbursed medical, dental, and other health care expenses, including psychological, psychiatric, therapy, and prescription expenses, and shall maintain in full force and effect any life insurance policy in effect with the plaintiff designated as beneficiary. Considering the shift in financial resources to the plaintiff due to the temporary maintenance award, each party shall be responsible for 50% of the children’s reasonable add-on expenses, including preschool and extracurricular activities. (Domestic Relations Law § 240 [1-b] [c] [4], [5], [7].)
*778 The total support award of $10,424.59 per month ($6,217.42 per month for temporary maintenance and $4,207.17 per month for child support) shall be paid by the defendant to the plaintiff on the first day of each month. From this amount, the plaintiff is responsible for paying all of the expenses for the marital residence, as well as all other expenses for herself and for the children, except that the defendant shall be responsible for continuing and maintaining in full force and effect the medical, dental, and life insurance coverages for the benefit of the plaintiff and children in accordance with this decision.
Once the maintenance award terminates, if the parties’ incomes remain the same, under the CSSA, the defendant’s child support obligation would increase to $72,122 per year or $6,010.17 per month.
This award is retroactive to the original date of service of this application. (See Domestic Relations Law § 236 [B] [6]; Dooley v Dooley, 128 AD2d 669 [2d Dept 1987].) Retroactive sums due by reason of this award shall be paid at the rate of $500 per month in addition to the sums awarded until all arrears have been satisfied. The defendant may take a credit for sums voluntarily paid for actual maintenance and support of the plaintiff and children incurred after the making of this motion and prior to the date of this decision for which he has canceled checks or other similar proof of payment. (See Peltz v Peltz, 56 AD2d 519 [1st Dept 1977]; Pascale v Pascale, 226 AD2d 439 [2d Dept 1996].) The first payment hereunder shall be made within 10 days of the date of this decision and order and then monthly thereafter, with payment to be made by the first day of each month.
Exclusive Use and Occupancy of the Marital Residence
An order for exclusive use and occupancy of the marital residence during the pendency of a divorce action is only appropriate “upon a showing that the relief is necessary to protect the safety of persons or property, or one spouse has voluntarily established an alternative residence and a return would cause domestic strife.” (Taub v Taub, 33 AD3d 612, 612 [2d Dept 2006].) Where a party voluntarily establishes an alternative residence and where the parties’ relationship is acrimonious or domestic strife exists, the court may award exclusive occupancy of the marital residence. (Preston v Preston, 147 AD2d 464 [2d Dept 1989]; Kristiansen v Kristiansen, 144 AD2d 441 [2d Dept 1988].)
Here, the defendant was removed from the marital residence by a temporary order of protection issued by the Family *779 Court directing him to stay away from the plaintiff and the children at the marital residence, except for purposes of pick up and drop off during periods of visitation. Each party has a family offense petition pending against the other. It is apparent from both parties’ affidavits that their relationship is acrimonious and domestic strife exists. The defendant has been residing with his parents since December 15, 2010 when the temporary order of protection was issued. Considering these facts, the plaintiff is awarded pendente lite exclusive use and occupancy of the marital residence.
Custody
The plaintiffs application for temporary custody was withdrawn without prejudice, as the parties agreed to make efforts to resolve their parenting issues with the Family Case Analyst, Katherine Mueller. Considering the young ages of the children and the parties’ circumstances, the parties are directed to make good faith efforts to resolve their parenting issues with the assistance of the Family Case Analyst to avoid incurring unnecessary legal fees. In addition, the parties shall refrain from undermining the other’s relationship with the children and shall refrain from making derogatory or insulting remarks about each other in front of the children.
Interim Counsel Fees
The plaintiff seeks an order directing the defendant to pay pendente lite counsel fees to the plaintiffs attorneys in the sum of $7,500. Domestic Relations Law § 237 was recently amended to create a “rebuttable presumption that counsel fees shall be awarded to the less monied spouse.” The statute further provides that, in exercising its discretion, the court shall seek to assure that each party is adequately represented, and that any award for fees and expenses is made on a timely basis, pendente lite, so as to enable adequate representation from the commencement of the proceeding. (Domestic Relations Law § 237 [a].)
Here, although the defendant has earned a significant salary throughout the marriage, and the plaintiff has no earnings, the court has to consider that the defendant is not working at the present time and there are limited, if any, assets to be used for fees. Although the defendant was the monied spouse, the support award shifts the parties’ finances, giving the plaintiff more available resources. Considering that the parties have few assets to consider, the shift in financial resources to the plaintiff rebuts the presumption that the defendant is the monied spouse. *780 (See Scott M. v Ilona M., 31 Misc 3d 353 [Sup Ct, Kings County 2011].) Nevertheless, the defendant, who has a Harvard MBA, has the ability to return to work and earn a substantial income, while it does not appear that the plaintiff has any significant earnings potential in the near future. It also appears that the plaintiff lacks sufficient funds of her own to compensate counsel.
Plaintiff seeks $7,500 in interim counsel fees. The defendant has paid his attorneys a retainer fee of $10,000. Domestic Relations Law § 237 (a) authorizes the court to
“direct either spouse ... to pay counsel fees and fees and expenses of experts directly to the attorney of the other spouse to enable the other party to carry on or defend the action or proceeding as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties.”
This statute
“is designed to redress the economic disparity between the monied spouse and the non-monied spouse. Recognizing that the financial strength of matrimonial litigants is often unequal . . . the Legislature invested Trial Judges with the discretion to make the more affluent spouse pay for legal expenses of the needier one. The courts are to see to it that the matrimonial scales of justice are not unbalanced by the weight of the. wealthier litigant’s wallet.” (O’Shea v O’Shea, 93 NY2d 187, 190 [1999].)
Moreover, “courts should not defer requests for interim counsel fees to the trial court, and should normally exercise their discretion to grant such a request made by the nonmonied spouse, in the absence of good cause.” (Prichep v Prichep, 52 AD3d 61, 65 [2d Dept 2008].) “An appropriate award of attorney’s fees should take into account the parties’ ability to pay, the nature and extent of the services rendered, the complexity of the issues involved, and the reasonableness of the fees under all of the circumstances.” (Grumet v Grumet, 37 AD3d 534, 536 [2d Dept 2007].)
Accordingly, in order to create parity in the divorce litigation, while also considering the shift in financial resources to the plaintiff, the parties’ lack of assets to pay for litigation fees, and the noncomplexity of the issues presented, the plaintiff is awarded interim counsel fees in the amount of $5,000 to be paid by the defendant directly to the plaintiffs attorney within 30 days after the date of this decision.
*781 Because this is a relatively straightforward case, involving a short-term marriage of 3V2 years, the parties are encouraged to make every effort to resolve this case expeditiously to avoid incurring any further unnecessary litigation expenses. There appears to be no reason why this case cannot be resolved in a short period of time, with a minimal amount of legal fees. If the case is not resolved by June 17, 2011, the date set for the compliance conference, the parties are directed to appear at the conference with their counsel prepared to enter into meaningful settlement negotiations.
Automatic Stay
The parties are reminded that, pursuant to Domestic Relations Law § 236 (B) (2) (b) and 22 NYCRR 202.16-a, they are prohibited from selling, transferring, encumbering, concealing, assigning, removing or in any other way disposing of, without the written consent of the other party or by order of the court, any property, including, but not limited to, real estate, personal property, cash accounts, stocks, mutual funds, bank accounts, retirement accounts, cars and boats, individually or jointly held by the parties, except in the usual course of business, for customary and usual household expenses or for reasonable attorney’s fees in connection with this action.
Family Offense Proceedings
The temporary order of protection expires on March 25, 2011. Each party has a family offense petition filed against the other. Therefore, the parties are directed to appear in Court on March 22, 2011 at 9:30 a.m. for a trial on the family offense petitions. If the parties agree to extend the temporary order(s) of protection, they shall submit a written stipulation to the court by March 18, 2011 for the trial to be adjourned.
All other relief requested and not decided herein is denied.